# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO RUIZ, | Case No. 1:22-cv-01255-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| FRANK BISIGNANO, Commissioner of Social Security[1], | |
| Defendant. | (Doc. 1) |
| _____ / | |

## I.    INTRODUCTION

Plaintiff Eduardo Ruiz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    FACTUAL BACKGROUND

Plaintiff was born in 1974, has a limited education, and has no prior work history.

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 14.) On April 13, 2026, this case was reassigned to the undersigned. (*See* Doc. 20.)

(Administrative Record ("AR") 29, 39–40, 87, 295.)  In a decision dated March 6, 2019, an Administrative Law Judge ("ALJ") rejected Plaintiff's prior application for SSI payments, finding severe impairments of history of left knee meniscectomy, degenerative disc disease of the lumbar spine, cubital tunnel syndrome, and posttraumatic stress disorder, and assessing a residual functional capacity ("RFC")[3] of less than light work with noncomplex routine tasks in a nonpublic, nonteam setting with occasional coworker contact.  (AR 62–76.)

Plaintiff filed another claim for SSI on April 1, 2020, alleging he became disabled on March 7, 2019, due to [post-traumatic stress disorder] (PTSD), lower back problems, knee problems, sleep apnea, asthma, anxiety, and depression.  (AR 20, 87–88, 104–105, 290, 294, 300, 314.)

**A.      Relevant Evidence of Record[4]**

**1.      Medical Evidence**

In January 2019, Plaintiff presented for a medication follow up appointment with Megan Greenberg, Family Nurse Practitioner (FNP).  (AR 893–98.)  He reported that he was "feeling much better emotionally" than last visit.  (AR 893.)  His history of PTSD and adjustment disorder with mixed anxiety and depressed mood was noted.  (AR 893.)  He was taking Risperdal and Cymbalta for his mental health issues.  (AR 895.)  FNP Greenberg assessed Plaintiff with "major depression," which had "much improved."  (AR 897.)

Plaintiff reported to FNP Greenberg in March 2019 that he had lost his motivation to eat well and take care of himself.  (AR 887–92.)  His history of PTSD and adjustment disorder with mixed anxiety and depressed mood was again noted.  (AR 888.)  He was continuing his mental health medication.  (AR 889–90.)  On examination, Plaintiff had limited judgment and insight and depressed affect.  (AR 891.)  FNP Greenberg found that Plaintiff's depression had "worsened," but

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[4] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

was "not as bad as at [the] end of last year." (AR 892.)

In September 2019, it was noted Plaintiff had been recently hospitalized for "sepsis secondary to perineal abscess." (AR 873.) Plaintiff underwent an x-ray of his right knee in October 2019, which showed "[m]ild arthrosis medial lateral knee compartments and patellofemoral joint." (AR 625.) That same month, Plaintiff presented for a medication refill appointment. (AR 865–71.) It was noted that his "abscesses finally healed[,] and he has no further issues with infection." (AR 865.) An x-ray of Plaintiff's right shoulder performed a few months later showed "[m]ild AC joint osteoarthritis without acute osseous abnormality" and "[s]uspect[ed] calcific tendinopathy." (AR 370.)

Plaintiff attended an appointment in January 2020 to treat his diabetes mellitus and chronic pain. (AR 860–64.) He complained of worsening pain and stiffness in his right shoulder. (AR 860.) On examination, Plaintiff had tenderness to palpation along his right anterior shoulder and stiffness with passive and active range of motion. (AR 862.) Limited judgment and insight were noted. (AR 862–63.) FNP Greenberg observed that Plaintiff's antipsychotic medication Risperdal is "one of the worst" for diabetes and noted that she would inquire if he was willing to try another medication. (AR 863.)

In February 2020, Plaintiff presented for an appointment to treat his right shoulder pain. (AR 1099–1104.) He reported that he "takes Norco for back pain but it does not provide relief for [his] shoulder." (AR 1102.) On examination, Plaintiff had limited range of motion due to pain and reduced strength in his bilateral upper extremities. (AR 1102.) He was assessed with calcific tendonitis and muscle and tendon strain. (AR 1103.) Later that month, Plaintiff presented to the emergency department reporting that he is coughing up blood. (AR 341–55.) A history of sepsis was noted. (AR 343.) He was previously diagnosed with an upper respiratory tract infection. (AR 343.) Plaintiff was noted to be cooperative during the visit, and a physical examination showed "grossly normal range of motion" and normal gait. (AR 344, 352.)

Plaintiff presented to the emergency department complaining of sore throat and cough in March 2020. (AR 336–41.) On examination, he had mild tachycardia, pain anterior to his chest with cough, normal range of motion, and normal mood and affect. (AR 337.) That next month,

Plaintiff attended an appointment to treat his diabetes mellitus and chronic pain.  (AR 855–57.)  It was noted that Plaintiff takes the pain medication Norco 10/325 mg tablets four times per day, a regimen that he has been "for years" and that which "works well to relieve pain and allow [him] to attend to daily activities."  (AR 855.)  Plaintiff's physical examination was normal, with normal respiration, normal insight, and normal judgment.  (AR 856.)  Plaintiff again presented to the emergency department to treat an insect bite in May 2020.  (AR 919–43.)  He was noted to be cooperative.  (AR 924.)

In July 2020, Plaintiff attended a follow up appointment to treat his diabetes mellitus and chronic pain.  (AR 1133–39.)  Plaintiff's 2016 lumbar spine MRI was discussed, which showed "severe degenerative disc disease at L4-5 with mild spinal stenosis and moderate foraminal narrowing, and facet arthropathy at LS-S 1 with moderate foraminal narrowing."  (AR 1133.)  His left knee MRI in 2017 showed "a complex lateral meniscus tear and mod/severe [osteoarthritis]."  (AR 1133, 1147–48.)  The provider noted that "it seems [Plaintiff] is back to his somewhat fatalistic attitude."  (AR 1133.)  It was also noted that Plaintiff takes the pain medication Norco four times per day, a regimen that he has been "very stable" on "for years" and that which "relieves pain such that he is able to do his daily activities."  (AR 1133.)  A physical examination showed left knee tenderness and mildly reduced range of motion, normal range of motion in Plaintiff's spine and right knee, poor judgment, appropriate mood and affect, and normal insight.  (AR 1137.)  A lumbar spine MRI performed that same month showed "[s]evere disc height loss and endplate degeneration at L4-L5," "[m]oderate to severe bilateral foraminal stenosis at L5-Sl;" "[s]evere facet arthropathy at L5-S 1," and "[m]oderate facet arthropathy at L4-L5."  (AR 1144–45.)  A left knee x-ray performed at the same time showed "[s]evere and worsening arthritic disease."  (AR 1146.)

Plaintiff presented for another follow up appointment to treat his diabetes mellitus in September 2020.  (AR 1126–32.)  He indicated he was "stressed" due to the prospect of going to jail.  (AR 1126.)  FNP Greenberg noted his mood was "a bit subdued," but otherwise appropriate, with appropriate affect, normal insight, and normal judgment.  (AR 1130.)  That same month, Plaintiff presented to an orthopedic clinic for treatment of left knee pain.  (AR 1093–97.)  He complained he is pain "all the time" and cannot stand for more than one hour or kneel.  (AR 1096.)

Physical examination showed "painful range of motion and mild valgus," "[c]repitus and grinding over lateral joint line," and "[p]ositive patellar grind test." (AR 1096.) It was noted that objective testing showed "significant arthritic change with [j]oint space narrowing laterally, sclerosis and osteophytic spurring," as well as "[p]atellofemoral changes." (AR 1096.) The provider recommended a total knee arthroplasty, noting that Plaintiff "will not benefit from another arthroscopic surgery." (AR 1096.)

Later that month, Plaintiff complained of chest pain and shortness of breath. (AR 951–75.) His history of morbid obesity, chronic back pain, diabetes mellitus, hyperlipidemia, and arthroscopic knee surgery was noted. (AR 958, 968, 969.) Testing showed his left ventricular ejection fraction was 58% at rest and 59% at stress. (AR 952.) Plaintiff was noted to be cooperative, and a physical examination showed mild upper right quadrant abdominal tenderness, with normal range of motion, normal strength, intact sensation and memory, appropriate judgment, and normal mood and affect. (AR 954, 959, 971.) A nuclear stress test performed that same month was negative for ischemia. (AR 975–76.) Plaintiff presented to the emergency department later that month with complaints of fever, productive cough, headache, body aches, and congestion, where he was noted to be "cooperative" with a "steady gait." (AR 1000–1019.)

In November 2020, Plaintiff complained of body aches, headache, chills, and cough, after having previously tested positive for COVID-19. (AR 1020–33.) On examination, it was noted that he was "cooperative" and "moves all extremities with out [*sic*] difficulty." (AR 1023.) A left knee MRI performed in 2020 showed "[a]dvanced degenerative arthritic changes in the lateral joint compartment as seen, likely posttraumatic," "[a] complex degenerative type of tear with maceration of the meniscal substance involving the lateral meniscus," "articular cartilage thinning in patellar articular cartilage and femoral trochlea, representing degenerative changes," and "[a]ttenuation of the lateral collateral ligament, representing a tear," with a "loose body present adjacent to the insertion of the lateral collateral ligament." (AR 1149–50.)

Plaintiff attended a follow up appointment to treat his diabetes mellitus and chronic pain in January 2021. (AR 1120–25.) He reported receiving an "unloader brace" for his left knee and that it is "quite helpful." (AR 1120.) On examination, FNP Greenberg found Plaintiff's gait was

antalgic, with poor judgment, appropriate mood and affect, and normal insight.  (AR 1123.)  In February 2021, Plaintiff complained of myalgia and sore throat.  (AR 1053–59.)  He also reported anxiety.  (AR 1054.)  A physical examination showed normal range of motion, intact memory, appropriate judgment, and anxiety.  (AR 1055–56.)  That next month, Plaintiff established care with a new provider to treat his diabetes mellitus.  (AR 944–47.)  He was noted to be "pleasant."  (AR 944.)  Plaintiff attended another follow up appointment to treat his diabetes mellitus in April 2021.  (AR 1112–19.)  He was observed to have appropriate mood and effect, normal insight, and normal judgment.  (AR 1116.)

In June 2021, Plaintiff again presented to the orthopedics clinic for treatment of his left knee pain.  (1088–92.)  On examination, "[p]ainful grinding and crepitus throughout arc of motion 0 to 120 degrees" was noted, with "[m]edial lateral joint line pain" and "[p]ositive patella ballottement test."  (AR 1091.)  The provider discussed Plaintiff's "failed conservative treatment" and once again recommended a total joint arthroplasty.  (AR 1091.)

**2.    Opinion Evidence**

In 2020, State agency psychological consultants S. Khan, M.D. and Uwe Jacobs, Ph.D. found that Plaintiff's "trauma and stressor-related disorders" was "severe"; he had moderate understanding, memory, concentration, persistence, social interaction, and adaptation limitations; and he was limited to performing "non-complex and routine tasks in a non-public setting with occasional work-related, non-personal, non-social contact involving no more than a brief exchange of information or hand-off of a product with coworkers, in addition to being incapable of working as part of a team." (AR 95–96, 99–101, 115–116, 119–121.)

FNP Greenberg completed a medical source "Questionnaire" regarding Plaintiff's physical functioning in June 2021.  (AR 1187.)  She opined that Plaintiff is incapable of working at any level of exertion; is limited to lifting and carrying 20 pounds; can sit for one hour at one time, and stand or walk for 30 minutes at one time; and sit for two hours, and stand or walk for one hour, over an eight-hour workday, in addition to needing to lay down the remainder of the day.  (AR 1187.)  She stated that Plaintiff's "primary impairments" are "knee osteoarthritis" and "degenerative disc disease" in his spine, and she based her opinion on "X-rays and MRIs."  (AR 1187.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on May 11, 2020 (AR 20, 134–39), and again on reconsideration on July 31, 2020 (AR 20, 143–149).  Consequently, Plaintiff requested a hearing before an ALJ.  (AR 150–67.)  At the hearing on July 19, 2021, Plaintiff appeared telephonically with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 39–50.)  A Vocational Expert ("VE") also testified at the hearing.  (AR 50–58.)

**C.     The ALJ's Decision**

In a decision dated August 24, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 20–30.)  The ALJ first determined that Plaintiff had rebutted the "presumption of continuing non-disability" arising from the ALJ's prior finding of non-disability in 2019, established by the Ninth Circuit case *Chavez v. Bowen*, because Plaintiff had shown "changed circumstances," specifically "a change in the musculoskeletal listings."  (AR 20–21 (citing *Chavez v. Bowen*, 844 F.2d 691 (1988) and Social Security Acquiescence Ruling ("SS AR"), 97-4(9).)

The ALJ then proceeded to conduct the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 23–30.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2020, the application date (step one).  (AR 23.)  At step two, the ALJ found Plaintiff's following impairments to be severe: osteoarthritis of the left knee and degenerative disc disease of the lumbar spine.  (AR 23–25.)  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 25–26.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five (AR 26–29).  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b).  [Plaintiff] has been capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, as well as sitting for six hours, and standing and/or walking for six hours, in an

eight-hour workday. He can occasionally kneel, crawl, crouch, stoop, and climb ramps and stairs.

(AR 26.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "only partially consistent with the evidence of record and do not support a finding of disability."  (AR 27.)

The ALJ determined that Plaintiff did not have any past relevant work (step four) and that, given his RFC, he could perform a significant number of jobs in the national economy (step five). (AR 29–30.)  Finally, the ALJ concluded Plaintiff has not been disabled since April 1, 2020, the application date.  (AR 30.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 29, 2022.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe

impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must

determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to adopt their prior decision's mental impairment severity and RFC limitations in the absence of a material change, in violation of *Chavez*; (2) discounting the opinions of the state agency psychological consultants Drs. Khan and Jacobs and primary care provider FNP Greenberg; (3) failing to articulate clear and convincing reasons for discounting his testimony; and (4) relying on the "incomplete" opinions of the state agency physicians as to his physical limitations. (Doc. 16; Doc. 19.) The Commissioner responds that the ALJ properly applied *Chavez*, appropriately evaluated and relied on the medical opinion evidence, and substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms. (Doc. 18.)

The Court agrees with Plaintiff that the ALJ did not adequately evaluate the opinions of Drs. Khan and Jacobs and FNP Greenberg. Because further proceedings are required regarding the

medical opinion evidence, the Court does not reach the other allegations of error.[5]

## A.    Legal Standard

Plaintiff's claim for SSI is governed by the agency's regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 416.920c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 416.920c(b)(2).  And although the regulations eliminate the prior "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.  *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Woods*, 32 F.4th at 792

---

[5] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

(citing 20 C.F.R. § 404.1520c(b)).  *See also id*. § 416.920c(b).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"   *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).   *See also id*. § 416.920c(c)(1).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  *See also id*. § 416.920c(c)(2).

> As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3).  Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v).  However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792; *see also* 20 C.F.R. § 416.920c(c)(3).  "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'"  *Id*. (quoting § 404.1520c(b)(3)).  *See also id*. § 416.920c(b)(3).  "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'"  *Id*.  Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision.  *See* 20 C.F.R. § 415.920b(c)(3).

With these legal standards in mind, the undersigned reviews the weight given to the opinions of state agency psychological consultants Drs. Khan and Jacobs and primary care provider FNP Greenberg.

**B.      Analysis**

**1.      Drs. Khan and Jacobs**

The ALJ found that Plaintiff's mental impairments of depression and post-traumatic stress disorder were "non-severe" at step two.[6]  (AR 24.)  This finding was based in part on the ALJ's

---

[6] "At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments."  *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)).

determination that the opinions of the state agency psychological consultants Drs. Khan and Jacobs were "unpersuasive" because they were

> not supported by specific citation to underlying evidence and are inconsistent with the claimant's normal or appropriate mood, behavior, memory, judgment, and insight, as well as the lack of formal mental health treatment during the period at issue.

(AR 24–25.)

The ALJ sufficiently evaluated the supportability of Drs. Khan's and Jacobs' opinions by observing that their limitations were "not supported by specific citation to underlying evidence." (AR 25.)  The lack of a supporting explanation is a proper consideration in evaluating this factor. *See* 20 C.F.R. §416.920c(c)(1) (requiring the ALJ to consider "supporting explanations presented by a medical source."). *See also Woods*, 32 F.4th at 794 (substantial evidence supported finding that medical opinion, expressed in a "fill-in-the-blank questionnaire," was "not persuasive because it is not supported by any explanation" or "pertinent exam findings."); *Ponce v. Comm'r of Soc. Sec.*, No. 1:20-cv-01664-EPG, 2022 WL 196529, at *3 (E.D. Cal. Jan. 21, 2022) (declining to find the ALJ found a medical opinion unsupported where given on a "checkbox form with no significant narrative explanation" and "no citation to record evidence.").

The ALJ's evaluation of the consistency factor, however, is erroneous.  An ALJ may not "cherry-pick" evidence in evaluating a medical opinion. *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (collecting cases); *Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."). *See also* 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits).  Here, the ALJ characterized the evidence as demonstrating Plaintiff's normal mood, behavior, memory, judgment, and insight. (AR 25.)  In so doing, the ALJ isolated portions of the record that the ALJ concluded undermined Drs. Khan's and Jacobs' opinions but improperly ignored the other portions that were consistent with those limitations.  For example, several of the treatment

13

records relied on by the ALJ document findings and observations regarding Plaintiff's mental status that are abnormal, contrary to the ALJ's characterization and, more importantly, tend to be consistent with Drs. Khan's and Jacobs' opined limitations. (*See, e.g.,* AR 1130 ("subdued" mood); AR 1133 ("fatalistic attitude") AR 863 ("limited" judgment); AR 1123, 1137 ("poor" judgment").) Other evidence in the record—unmentioned by the ALJ—further bolster the limitations, including observations of a loss of motivation to take care of oneself (AR 887), "limited judgment and insight" (AR 891), "depressed affect" (AR 891), and "worsened" depression (AR 892).

Further, the ALJ's conclusion that Plaintiff lacked "formal mental health treatment" is incorrect. The record demonstrates that Plaintiff discussed his depressive symptoms and received psychiatric medication (Risperdal and Cymbalta) management from FNP Greenberg to treat his history of PTSD, adjustment disorder with mixed anxiety and depressed mood, and major depressive disorder. (*See* AR 863, 893, 895, 897, 887, 888, 889–90, 892.) "Contrary to the ALJ's assertion, 'medication management' by a primary care provider, including the prescribing of psychotropic medication for depression and anxiety, as opposed to by a mental health specialist, still [constitutes] formal mental health treatment, and is not a proper basis to discredit a claimant's complaints or a doctor's opinions of limitations." *Dean v. Colvin*, No. 13-CV-05369 JRC, 2014 WL 1364951, at *5 (W.D. Wash. Apr. 7, 2014) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)); *see also Schiaffino v. Saul*, 799 F. App'x 473, 476 (9th Cir. 2020) (holding that ALJ erred in rejecting opinion based on Plaintiff's irregular treatment with a psychiatrist); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("in the case of a mental health disorder, failure to seek treatment may be an unfortunate result of the disorder").

### 2. FNP Greenberg

The ALJ erred in their evaluation of primary care provider FNP Greenberg's opinion because they failed to articulate an explanation for rejecting the opinion that is supported by substantial evidence. *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence"). With respect to the supportability factor, the ALJ found that FNP Greenberg's opinion was "unsupported by any recitation of symptoms or reference to treatment

notes." (AR 28.) The ALJ does not mention, however, that FNP Greenberg supported her assessment by citing to objective testing, specifically "X-rays and MRIs." (AR 1187.) These test results, which, as the ALJ noted (AR 27), showed severe degenerative disc disease, foraminal stenosis, and facet arthropathy in Plaintiff's lumbar spine (AR 1133, 1144–45); a complex lateral meniscus tear, advanced degenerative arthritic change and a tear of the lateral collateral ligament in Plaintiff's left knee (1096, 1133, 1146, 1147–48, 1149–50); and calcific tendinopathy in Plaintiff's right shoulder (AR 370), tend to substantiate FNP Greenberg's opined limitations in Plaintiff's ability to lift, carry, stand, sit, and walk. By ignoring the basis given by FNP Greenberg for her opinion, and by omitting any discussion as to as to whether these objective findings support the opined limitations, the Court concludes that the ALJ's supportability analysis lacks substantial evidence. *See McKinsey v. Comm'r of Soc. Sec.*, No. 1:24-CV-00113-HBK, 2025 WL 830078, at *4–5 (E.D. Cal. Mar. 17, 2025) (ALJ erred by "entirely fail[ing] to consider the extent to which any objective evidence and explanations presented by Dr. Stinson support her opinion as required when considering the supportability factor."); *Katherine D. v. Comm'r, Soc. Sec. Admin.,* No. 6:20-CV-1920-MO, 2024 WL 244625, at *6 (D. Or. Jan. 23, 2024) ("Regarding 'supportability,' the ALJ erred by failing to discuss the strength of the evidence underlying Dr. Hallenburg's conclusions.").

The ALJ's evaluation of the consistency factor is equally problematic. The ALJ found that FNP Greenberg's opinion was "inconsistent with [Plaintiff's] largely normal gait and range of motion, as well as multiple references to the claimant's pain control regimen controlling his symptoms and enabling him to perform his activities of daily living." (AR 28–29.) This finding is once again the result of "cherry-picking" the evidence. Some of the records on which ALJ relies to conclude Plaintiff's gait and range of motion were "normal" show just the opposite. (*See, e.g.*, AR 1123 ("antalgic" gait), 1137 ("tenderness" and "mildly reduced range of motion" in Plaintiff's left knee). Still others, overlooked completely, document similar abnormal results, including limited range of motion and reduced strength in Plaintiff's bilateral upper extremities (AR 1102) and "painful range of motion" with "[p]ositive patellar grind test" in Plaintiff's left knee (AR 1096). Further, the ALJ's conclusion that Plaintiff's opioid medication regimen controlled his symptoms is belied by the record, as it documents reports that he "takes Norco for back pain but it does not

15

provide relief for [his] shoulder" (AR 1102) and is "in pain all the time" and cannot stand for more than one hour or kneel (AR 1096), and his orthopedic specialist's repeated recommendation that he undergo a total joint arthroplasty in view of his "failed conservative treatment" (AR 1091, 1096).

Based on the above-cited records, ALJ's evaluation of the consistency of FNP Greenberg's opinion appears based on selective and isolated notations from the medical evidence, which is improper. *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (collecting cases); *Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."). *See also* 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits).

The Court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. *Ford*, 950 F.3d at 1154. It is also mindful of the deference desired by the agency in promulgating these revised regulations. *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01 at *5860 ("[The new regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 416.920c(b)(2). Harmonizing this requirement with Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe*, 2021 WL 1966202, at *7 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected"). This the ALJ did not do, and therefore the Court declines to find substantial evidence supports the ALJ's non-severity mental

findings at step two or the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence"); *Giles v. Astrue*, No. EDCV 08-0270-RC, 2009 WL 2485729, at *6 (C.D. Cal. Aug. 11, 2009 ("[T]he ALJ's failure to properly consider Dr. Schmid's opinion is legal error, and the Step Two finding is not supported by substantial evidence.") (citing *Smolen*, 80 F.3d at 1286)).

**C.    Harmless Error Analysis**

The error of the ALJ's analysis of the persuasiveness of medical opinion evidence is not harmless. An error in the ALJ's finding at step two is harmless if all impairments, severe and non-severe, were considered in the determination Plaintiff's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity). Here, in determining Plaintiff's RFC, the ALJ did not include or discuss any functional limitations related to Plaintiff's PTSD, depression, or anxiety, including those assessed by psychological consultants Drs. Khan and Jacobs, in determining Plaintiff's RFC. *See Inskeep v. Colvin*, No. 3:15-cv-00759-BR, 2016 WL 3509395, at *4 (D. Or. June 27, 2016) (finding error at step is not harmless where the ALJ did not include any mental limitations in their assessment of Plaintiff's RFC.)

With respect to Plaintiff's physical functioning, FNP Greenberg opined that Plaintiff would need to lay down or elevate his legs six to seven hours of an eight-hour workday (AR 1187), whereas the VE testified that they a requirement that a person would need to elevate the leg while lying down at least two hours a day would be work preclusive (AR 53). The Court therefore cannot conclude that the ALJ's error in considering FNP Greenberg's opinion was "inconsequential to the ultimate nondisability determination," *Tommasetti*, 533 F.3d at 1038. *See Carter v. Comm'r of Soc. Sec.*, No. 2:24-CV-01177-DGE, 2025 WL 747429, at *10 (W.D. Wash. Mar. 10, 2025) ("These errors were not harmless, as they impacted the RFC formulated by the ALJ. If Plaintiff's testimony and the opinions of Dr. Craig and Nurse Wong had been credited, the ALJ could not have concluded Plaintiff was able to work.") (internal citations omitted); *see also Suzi Marie H.*, 2024 WL 965233, at *14

(determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

**D.      Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds, and Plaintiff agrees (*see* Doc. 16 at 24), that remand for additional proceedings is necessary because the persuasiveness of the discounted limitations opined by Drs. Khan and Jacobs and FNP Greenberg must be re-analyzed before a determination of disability may be made.[7] *See* 20 C.F.R. § 416.920c(c)(2); *see also Buethe*, 2021 WL 1966202, at *7 (Because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits."); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

**V.      CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED.  The case is REMANDED to an ALJ for further proceedings consistent with this Order.  The Clerk of Court is DIRECTED to enter judgment in

//

---

[7] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to the limitations.  Nor does the Court express what Plaintiff's RFC ultimately should be.  These are for the ALJ to decide. *Ford*, 950 F.3d at 1154.

18

favor of Plaintiff Eduardo Ruiz. and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 4, 2026**                          /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE